IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| KEMONTY M. HARVEY,<br>    Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 3:25cv155 (RCY) |
| USAA FEDERAL SAVINGS BANK,<br>    Defendant. | ) ) ) ) | |

**MEMORANDUM OPINION**

This action arises from Plaintiff Kemonty Harvey's execution of a financing agreement with Defendant USAA Federal Savings Bank ("Defendant" or "USAA"), in conjunction with Plaintiff's attempted purchase of a vehicle that—despite transmission of the purchase funds by USAA—was never ultimately delivered to Plaintiff. The case is before the Court on Defendant USAA's Partial Motion to Dismiss. As relevant to the instant Motion, Plaintiff alleges that Defendant failed to conduct a reasonable investigation after he disputed information appearing on his credit report related to the vehicle loan, resulting in the continued furnishing of inaccurate information to credit reporting agencies in violation of the Fair Credit Reporting Act ("FCRA"). The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, it is appropriate to grant the Partial Motion to Dismiss.[1]

---

[1] On March 27, 2026, the Court issued an Order granting the Motion to Dismiss, promising an opinion to follow. Order, ECF No. 22. This Memorandum Opinion explains the Court's reasoning underpinning that Order.

## I.  RELEVANT PROCEDURAL HISTORY

Plaintiff filed a four-count Complaint on February 28, 2025, asserting two claims pursuant to the FCRA, one Virginia Consumer Protection Act ("VCPA") claim, and a claim for intentional misrepresentation based on contract law.  *See generally* Compl., ECF No. 1.  On July 18, 2025, Defendant filed a Partial Motion to Dismiss, seeking dismissal of only Plaintiff's FCRA claims, Mot. Dismiss, ECF No. 12; Mem. Supp. Mot. Dismiss ("Mem. Supp."), ECF No. 13, as well as an Answer addressing Plaintiff's remaining state law claims, Answer, ECF No. 14.  Six days later, on July 24, 2025, Defendant also filed a Notice containing the consumer loan agreement ("Loan Agreement" underlying the instant dispute.  Def.'s Not., ECF No. 15; Not. Ex. A ("Loan Agmt."), ECF No. 15-1.

Plaintiff filed his Response in Opposition to Defendant's Partial Motion to Dismiss on August 15, 2025, Pl.'s Resp., ECF No. 18, after the Court granted an unopposed extension request of 28 days, ECF No. 17.  Defendant filed its Reply on August 28, 2025, ECF No. 20, after similarly receiving a filing extension, ECF No. 21.

## II.  STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).  Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While the complaint's "[f]actual allegations must be enough to

2

raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Lab'ys., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citations omitted); *see also Martin*, 980 F.2d at 952.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.*

When deciding a motion to dismiss under Rule 12(b)(6), the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require accepting any unreasonable inferences or a plaintiff's legal conclusions. *Id.* Additionally, "a Court may consider documents attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (citing *Philips*, 572 F.3d at 180).

### III.  UNDERLYING FACTS

Applying the foregoing standards to resolve the instant Motion, the Court considers the facts alleged in the Complaint and contents of the Loan Agreement,[2] as follows.

### A.  Attempted Vehicle Purchase

In or around March 2022, Plaintiff attempted to purchase a vehicle from Michel Auto Sales Inc. ("the Dealer"), which purported to be a car dealership located in Jamestown, North Dakota. Compl. ¶ 28.  Specifically, Plaintiff contacted the Dealer regarding the potential purchase of the vehicle, and the parties exchanged emails and phone calls concerning that potential transaction. *Id.* ¶ 29.  Then, after being advised to do so by the Dealer, Plaintiff contacted USAA to finance the remote purchase of the vehicle and executed loan documents with USAA, including a promissory Loan Agreement.  *Id.* ¶¶ 31–32.  Additionally, "Plaintiff executed a 'North Dakota Vehicle Purchase Order,' which identified 'USAA Federal Savings Bank' as the party for which the Loan was 'in favour [sic] of.'"  *Id.* ¶ 35.

The Dealer and USAA then communicated with each other regarding the transaction, including through a Dealer Funding Form submitted by the Dealer to USAA directly (and not to

---

[2] As previously recited, Defendant provided the underlying Loan Agreement as a supplement to its Motion to Dismiss and Memorandum in Support thereof, which were filed six days prior.  For his part, Plaintiff refers to and relies upon the Loan Agreement throughout the Complaint, making it integral to the same.  *See* Complaint ¶¶ 3, 7–9, 13, 31–35, 44, 97, 102.  Notwithstanding this reliance, Plaintiff urges the Court to <u>not</u> consider the Loan Agreement, because Defendant "failed to attach the loan contract to its [motion to dismiss] filing."  Pl.'s Resp. 8 (citing *Harrell v. Freedom Mortg. Corp.*, 976 F.3d 434, 439 n.5 (4th Cir. 2020)).  In Plaintiff's view, "USAA should have filed a motion for extension of time under Federal Rule of Civil Procedure 6(b)(1)(B), which would have required that USAA establish 'excusable neglect' for its untimely submission."  *Id.*  The Court is not persuaded that there is good reason to disregard the Loan Agreement, as the Notice explains that the document was intended to be attached to the Memorandum in Support of the Motion to Dismiss, but was omitted "inadvertently."  Given how few days elapsed between Defendant's filing of its Motion and its filing of the Notice, the Court accepts Defendant's inadvertent error as the equivalent of excusable neglect and does not deem Plaintiff prejudiced thereby.  The cases cited by Plaintiff in support of exclusion are inapposite, as they represent circumstances not present here:  in both cases, the offering defendant only attached the document to its reply in support of a motion to dismiss—i.e., after the plaintiff's opportunity to address such material had closed, absent leave to file a sur-reply.  *See* Pl.'s Resp. 8 (first citing *Prestige Display & Packaging, LLC v. Temple-Inland, Inc.*, 2012 WL 2319253, at *4 (S.D. Ohio June 19, 2012); and then citing *Berryhill v. State of Illinois Toll Highway Auth.*, 2003 WL 115245, at *2 (N.D. Ill. Jan. 10, 2003)).

Plaintiff).  *Id.* ¶ 36.  The transaction concluded on March 17, 2022, when USAA received the requisite paperwork from the Dealer and Plaintiff executed the loan documents.  *Id.* ¶ 37.  At that point, USAA funded the purported purchase by sending $54,518.00 to the Dealer, after which Plaintiff was supposed to receive the vehicle via delivery in Virginia.  *Id.* ¶¶ 37, 41.  However, the vehicle never arrived.  *Id.* ¶ 42.

The Complaint alleges on information and belief that the account receiving the funds did not belong to the Dealer and was not in that entity's name, but instead was in the name of an individual person or a fictitious entity.  *Id.* ¶¶ 38–39.  Plaintiff further alleges, again on information and belief, that the information contained in the Dealer Funding Form was sufficient to alert USAA to the fraudulent nature of the transaction.  *Id.* ¶ 40.

## B.  Credit Disputes

On March 21, 2022, Plaintiff reported the fraud to both USAA and law enforcement in Virginia and North Dakota.  *Id.* ¶ 43.  Notwithstanding the fact that Plaintiff never received the vehicle, USAA informed Plaintiff that he was required to continue making payments on the loan. *Id.* ¶ 44.  Plaintiff responded that "he never received value for the Loan and that he, therefore, was not liable to pay it."  *Id.* ¶ 45.  USAA nonetheless continued to hold Plaintiff responsible for payments.  *Id.* ¶ 47.  Plaintiff at some point thereafter ceased making payments, and, despite Plaintiff's assertions that he was not responsible for repaying the loan based on the underlying fraud, USAA reported the account negatively on Plaintiff's consumer reports—namely, those maintained by Equifax, Experian, and Trans Union (collectively, "Credit Reporting Agencies" or "CRAs").  *Id.* ¶¶ 17–19, 50–51.

Plaintiff disputed USAA's report of the loan account on three separate occasions by sending letters to the CRAs.  *Id.* ¶¶ 51, 56, 61.  Each time, the CRAs forwarded Plaintiff's dispute

to USAA, but USAA responded by verifying the inaccurate information. *Id.* ¶¶ 51–65. Consequently, the reported account remained on Plaintiff's credit reports, allegedly resulting in "actual damages, including credit denials, a home loan denial, a decreased credit score, damage to reputation, and emotional distress." *Id.* ¶ 66.

## C. Loan Agreement Terms

As relevant to the instant Motion, the Loan Agreement contains the following provisions.

In the "Promise to Pay" section, Plaintiff promises to repay the principal sum plus interest, "[f]or value received." Loan Agmt. 2, ECF No. 15-1; *see also* Compl. ¶ 32. This section also includes an acknowledgement that—

> If you[3] determine before funding the Loan that I made false representations, certifications, or statements to you in connection with my Loan application (for example, about myself, the purpose of the Loan, or what I am financing with the Loan), I agree that you are not required to fund the Loan and may not do so under these conditions. If this happens, I understand that no payments are required by the Loan Agreement unless you fund the Loan."

Loan Agmt. 2. Finally, this section provides that "[t]he purpose of this Loan is **Purchase a Car**." *Id*. (emphasis in original).

In the "Payment" section, the Loan Agreement provides, "The first payment will be in the amount of **$1,003.48** and will be due **04/05/2022**." *Id*. (emphases in original).

In the "Default" section, Plaintiff agreed and acknowledged that he would "be in default if any of the following occur," with the following default events listed:  (1) "fail[ing] to make a payment when due;" (2) "fail[ing] to perform any condition or keep any promise of this or any agreement [between Plaintiff and USAA] related to this Loan Agreement;" (3) if USAA, "in good

---

[3] "I," "me," and "my" pronouns in the loan agreement refer to the borrower (Plaintiff), while "you" and "you" refer to the lender (USAA).  Loan Agmt. 2.

faith, believe[s] that the prospect of payment or the prospect of [Plaintiff's] performance of any other of [his] obligations under this Loan Agreement is impaired;" (4) if Plaintiff "make[s] any false statement in connection with this Loan Agreement or [his] Loan application;" and (5) if Plaintiff "breach[es] any certification, warranty or representation [made] in this Loan Agreement or any that [he] made in [his] Loan application." *Id.* at 3.

In the "Obligations Independent" section, Plaintiff acknowledged, *inter alia*, that USAA could "fail to perfect [its] security interest in, impair, or release any security, and [Plaintiff] will still be obligated to pay this Loan." *Id.* at 4. The "Security" named in the Loan Agreement was the vehicle Plaintiff intended to purchase with the loan funds—a 2017 Tesla Model X. *Id*. at 1. However, the Loan Agreement gave USAA the right to "release, substitute, or impair any property securing th[e] Loan Agreement." *Id.* at 3.

In the "Notice of Negative Information Furnishing" section, Plaintiff agreed that he "underst[ood] [USAA] may report information about [his] account to credit bureaus" and "that late payments, missed payments, or other defaults . . . may be reflected in [his] credit report." *Id.*

The Loan Agreement also contains the federally required Notice that "any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained with the proceeds hereof." *Id*. at 5.

Finally, in the "General Provisions" section, the Loan Agreement makes clear that "[t]his Loan Agreement cannot be contradicted by evidence of any alleged oral agreement between [USAA] and [Plaintiff]," and that "[o]nly terms in writing are enforceable." *Id*. at 4.

Notably, the Loan Agreement does not contemplate any scenarios where Plaintiff is released from his obligation to repay the loan proceeds once the loan is funded. *See generally id*.

## IV.  ANALYSIS

The instant motion to dismiss seeks dismissal of only Plaintiff's FCRA claims—specifically, Count I, which alleges a violation of 15 U.S.C. § 1681s-2(b)(1)(A) for failure to fully and properly investigate Plaintiff's disputes, and Count II, which alleges a violation of 15 U.S.C. § 1681s-2(b)(1)(B) for failing to review all relevant information provided by the CRAs.  Compl. ¶¶ 69, 82.  Defendant's dispositive dismissal argument as to both Counts turns on whether Plaintiff has plausibly alleged that Defendant furnished inaccurate information to the CRAs, to begin with—a threshold requirement for stating a claim under any part of § 1681s-2(b).

### A.  Elements of a § 1681s-2(b) Claim

The essential elements of a § 1681s-2(b) claim are:  "(1) the plaintiff submitted a dispute over the accuracy of information on a credit report to a consumer reporting agency; (2) the agency notified the furnisher of that dispute; and (3) the furnisher failed to conduct a reasonable investigation to determine whether the disputed information can be verified."  *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 249 (4th Cir. 2025) (cleaned up).  Thus, to state a claim under any subpart of § 1681s-2(b), a plaintiff must first "identify[] inaccurate or incomplete information that the furnisher provided to the reporting agency."  *Id.* at 249 n.4 (quoting *Milgram v. Chase Bank USA, N.A.*, 72 F.4th 1212, 1218 (11th Cir. 2023)); *see also* § 1681s-2(b).  Generally speaking, "inaccurate" information for purposes of the FCRA includes information that is both patently inaccurate or information that is "misleading in such a way and to such an extent that it can be expected to have an adverse effect."  *Id.* at 250 (quoting *Dalton v. Capital Assoc'd Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)).

8

**B. Plaintiff Has Not Plausibly Alleged that Defendant Reported Inaccurate Information for Purposes of the FCRA**

Defendant contends that Plaintiff's claims fail as a matter of law because the allegations in the Complaint itself demonstrate that the challenged reporting was not actionably inaccurate, for purposes of the FCRA. Mem. Supp. 4–6; Reply 2–5. Plaintiff, by contrast, argues that the reporting was inaccurate or, at minimum, patently accurate but nonetheless misleading because, while he executed the Loan Agreement, his repayment obligation was never triggered (since he never received the vehicle) or was otherwise unenforceable, in light of the allegedly fraudulent underlying transaction, and therefore the loan account should not have been negatively reported. Pl.'s Resp. 1–2.

The Court finds *Roberts v. Carter-Young, Inc.* to be instructive. There, the Fourth Circuit freshly defined what it means for reported information to be "accurate" (and, conversely, inaccurate) for purposes of the FCRA. 131 F.4th at 249–52. In so doing, the Fourth Circuit looked to opinions from the Eleventh and Second Circuits, where those courts had recently grappled with the same issue. *Id.* at 250–51. The Fourth Circuit found particularly useful the Second Circuit's holding that "reported information is actionably 'inaccurate' only if that information is objectively and readily verifiable." *Id.* at 251 (quoting *Sessa v. Trans Union LLC*, 74 F.4th 38, 42 (2d Cir. 2023)). If the accuracy inquiry requires "complex fact-gathering and in-depth legal analysis," it "is not objectively and readily verifiable." *Id.* This rule applies regardless of whether or not the accuracy challenge is based on a theory that the information is patently inaccurate or that it is materially misleading. *Id.* at 250 (noting that the *Dalton* holding (recognizing as valid both theories of inaccuracy) "does not address the question of whether disputes that raise legal questions fall inside or outside the purview of the FCRA," and proceeding to adopt the "objectively and readily verifiable" standard). Importantly, "while many legal disputes will not involve objectively

9

and readily verifiable information, some disputes that implicate legal questions and legal doctrines will." *Id.* at 252 (citing *Guthrie v. PHH Mortg. Corp.*, 79 F.4th 328, 345 (4th Cir. 2023), which found that reporting a delinquent balance on a plaintiff's credit report created an actionable inaccuracy because plaintiff was compliant under his bankruptcy plan).

Here, whether the reported loan account information was actionably inaccurate[4] turns on whether Plaintiff's dispute regarding the loan account information involves objectively and readily verifiable information. The Court finds that it does not, and therefore it is not actionably inaccurate.

Plaintiff's challenge to the reported information relies on the argument that the underlying debt never materialized because the purpose of the loan was frustrated by fraud, thus absolving him of his obligation to repay the disbursed funds. Pl.'s Resp. 9. While this is, in essence, an argument "that [the] alleged debt[] never occurred," *Roberts*, 131 F.4th at 252—a category of challenge recognized by the Fourth Circuit as *possibly* susceptible to being objectively and readily verifiable, *id.*—in this case it involves legal analysis into (1) whether Plaintiff's receipt of the vehicle can be read as a condition precedent of the contract, and/or (2) whether fraud constituted a *force majeure*, extinguishing Plaintiff's obligations under the Loan Agreement notwithstanding Defendant's performance. Such questions render this case analogous to one of the Second Circuit cases relied upon by the Fourth Circuit in *Roberts*: *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264 (2d Cir. 2023). There, the Second Circuit considered circumstances where a debtor (Mader) received a final decree of discharge via bankruptcy, which stated that Mader was released from all dischargeable debts, but an attachment to the decree noted that "debts for *most* student loans are

---

[4] Either patently or by way of being misleading. *See Roberts*, 131 F.4th at 250. Based on the comprehensive nature of the "objectively and readily verifiable" standard, the Court's following analysis applies to both of Plaintiff's theories of inaccurate reporting.

not discharged." *Id*. at 266 (emphasis added). When Mader subsequently challenged the accuracy of credit reports showing student loan debt, the Second Circuit held that the validity of that debt was not "objectively and readily verifiable," because of "[t]he bespoke attention and legal reasoning required to determine the post-bankruptcy validity of Mader's debt." *Id*. at 269–70.

The same is true here. Plaintiff's arguments concerning whether his receipt of the intended vehicle constituted a condition precedent to the underlying Loan Agreement is a legal question of contract interpretation, not an objectively verifiable fact.[5] It would be unreasonable to charge a layperson with reviewing the Loan Agreement to determine whether—despite the absence of language on the face of the Loan Agreement providing for a specific fraud-by-the-seller repayment release—the Agreement nevertheless allowed for Plaintiff to be relieved of his repayment obligation in such an instance.[6] As the Second Circuit held in *Mader*, such unresolved legal disputes "render[] [Plaintiff's] claim non-cognizable under the FCRA." *Id.* at 270.

Accordingly, because the question of whether Plaintiff owes Defendant repayment of the loan under the terms of the Loan Agreement despite the fraud/misdirection of the loan funds is a dispute that turns on bespoke legal analysis, not objectively and readily verifiable information, the Court cannot find that the reported loan account constituted actionably "inaccurate" information

---

[5] For example, there is room to debate whether Plaintiff's promise to pay was conditioned on the receipt of the vehicle, as Plaintiff argues, *see* Pl.'s Resp. 10, n.3 (relying on the "for value received" language of the Loan Agreement to argue that the vehicle was the value, and if the vehicle was never received, then no payment obligation was triggered), or on Defendant's funding of the loan, as the face of the agreement would suggest, *see* Loan Agmt. 2 (where Plaintiff agrees that his obligation to repay is triggered if Defendant funds the loan and setting a first payment date independent of any reference to Plaintiff's receipt of the to-be-purchased vehicle); *see also generally id.* (naming the Tesla as the Security underlying the Loan Agreement, not as the underlying "value," which could otherwise be interpreted as Defendant's funding of the Loan).

[6] This is the case even considering the Holder Rule Notice language included in the Loan Agreement. *See* Loan Agmt. 5. While the Notice language certainly allows for the assertion of claims and defenses against USAA otherwise available against the seller, the investigation of Plaintiff's fraud claims and assessment of his legal theory that the contract is *void ab initio* based thereon, *see* Compl. ¶¶ 45–46; Pl.'s Resp. 11, are not circumstances that are objectively *and readily* verifiable by a non-lawyer reviewing Plaintiff's obligations in response to a credit report challenge.

11

for purposes of the FCRA. *Roberts*, 131 F.4th at 251–52. And without such an inaccuracy, Plaintiff has failed to state a claim on either of his FCRA claims. *Id.* at 249 n.4.

## V. CONCLUSION

For the reasons detailed above, the Court concludes that it is appropriate to grant the Defendant's Motion to Dismiss and to dismiss Plaintiff's FCRA claims.

Let the Clerk file this Memorandum Opinion electronically and notify all parties accordingly.

_____ /s/

Roderick C. Young
United States District Judge

Date: April 13, 2026
Richmond, Virginia

12